UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
|                 Plaintiff, | Case No.  2:05-cr-00102-LDG-GWF |
| vs. | **FINDINGS & RECOMMENDATIONS** |
| GARARDO AVILA, | **(Motion to Dismiss Indictment - #20)** |
|                 Defendant. | |

This matter is before the Court on Defendant Garardo Avila's Motion to Dismiss Indictment (For Post-Indictment Delay) (#20), filed on August 1, 2007 and the Government's Response in Opposition to Motion to Dismiss (#22), filed August 9, 2007.  The Court conducted an evidentiary hearing on August 16, 2007.

The Indictment in this case was filed on March 23, 2005.  Defendant Avila was not brought before the court for his initial appearance and arraignment until June 29, 2007, two years and three months after the Indictment was filed.  Defendant Avila pled not guilty to the charges in the Indictment and the Court set trial in this case for August 27, 2007.   Defendant argues that the 29 month delay between the filing of the Indictment and the setting of the first trial date in this case violates his Sixth Amendment right to a speedy trial and requires dismissal of the Indictment.

**FACTUAL BACKGROUND**

Defendant was indicted in this case on March 23, 2005 for felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2) based on his alleged possession of a firearm on

September 1, 2004. The Indictment in this case names Defendant as "Garardo Avila, a/k/a Luis Ortega Avila." *See Indictment* (#1). According to the court docket, a warrant for Defendant's arrest on the Indictment was issued on March 23, 2005. Defendant, however, was not located by the Government agents responsible for apprehending and bringing him before the Court in this case until May 21, 2007 when it was determined that he was incarcerated in the federal prison in Victorville, California. Following the Government's discovery that Defendant Avila was in federal prison, the Government obtained a Writ of Habeas Corpus ad Prosequendum on June 20, 2007 to take Defendant Avila into custody, and he made his initial appearance on the Indictment in this court on June 29, 2007, at which time he was arraigned, pled not guilty and trial was set for August 27, 2007. Defendant was ordered detained in this case and has been in custody since his arraignment on June 29, 2007. Thus, there was a passage of two years and three months between the filing of the Indictment and Defendant's arraignment in this case.

Prior to the Indictment this case, Defendant Avila was indicted on October 5, 2004 in another case in the United States District Court for the District of Nevada, Case No. CR-S-04-399, for unlawful reentry of a deported alien in violation of 8 U.S.C. § 1326. The Indictment in that case identified Defendant as "Luis Gerardo Avila-Ortega a/k/a Fidel Hernandez-Ortega." *See Indictment* (#1) in Case No. CR-S-04-399. Defendant Avila made his initial appearance in Case No. CR-S-04-399 on October 6, 2004 at which time he pled not guilty and was ordered detained pending trial. Defendant thereafter entered a guilty plea in Case No. CR-S-04-399 on December 10, 2004. On April 22, 2005, he was sentenced to a term of imprisonment of 37 months. *See Judgment In A Criminal Case* (#24). Following his sentence in Case No. CR-S-04-399, Defendant was transferred to the United States Bureau of Prisons facility in Victorville, California to serve his sentence. Thus at the time of the Indictment in this case, Defendant Avila was actually in federal custody in this district awaiting sentencing in Case No. CR-S-04-399.

Criminal charges were also filed against Defendant Avila in the Nevada state court arising out of a September 1, 2004 arrest. Defendant was arraigned in the Nevada District Court in October 2006. The state authorities were apparently able to locate Defendant Avila in federal custody and bring him to Nevada for a preliminary hearing in the Nevada Justice Court and for his subsequent appearances in the

Nevada District Court for arraignment and sentencing on the state charges. Defendant was sentenced on the state conviction in December 2006 and he was thereafter returned to the federal prison in Victorville.

The Government called Special Agent Matthew Wear of the Department of Alcohol Tobacco Firearms and Explosives ("ATF") as its sole witness regarding the Government's efforts to find and apprehend Defendant Avila following the Indictment in this case. Agent Wear is the ATF case agent assigned to this case, but he did not become personally involved in handling this case until January, 2006. His testimony regarding what occurred prior to that time is based on information in the case file or information provided to him by other ATF agents or law enforcement officers.

Agent Wear testified that Defendant Avila was arrested by the Las Vegas Metropolitan Police ("Metro") on September 1, 2004 for alien in possession of a firearm, possession of methamphetamine, and trafficking in methamphetamine. On September 8, 2004, Immigration Custom Enforcement ("ICE") filed a detainer against Defendant because he is an illegal alien, and he was transferred by Metro to the custody of ICE on September 9, 2004. According to Agent Wear, Defendant was transferred to ICE's custody under the name "Luis Gerardo Avila Ortega." Agent Wear testified that Defendant was known by several other alias names, some of which included the foregoing names in different orders or combinations.

Following Defendant's arrest on September 1, 2004, Metro submitted the case to ATF for federal prosecution on the possession of firearms charge. Agent Wear testified that the ATF accepted the case for prosecution on September 24, 2004. He testified that following the ATF's acceptance of the case for prosecution, fingerprint records were obtained from the F.B.I. regarding Defendant's other convictions, and certified conviction documents regarding Defendant were also obtained. Agent Wear testified that the ATF submitted a case report to the U.S. Attorney's office on November 29, 2004, and Defendant was thereafter indicted by the grand jury on March 23, 2005.

Based on his review of the file, Agent Wear testified that a warrant for Defendant's arrest was issued on March 23, 2005 when the Indictment was filed. The ATF received a copy of the warrant the following day, and it was entered into the National Crime Information Center ("NCIC") under the name "Garardo Avila" and also under the alias "Luis Ortega Avila." According to Agent Wear, the entry of the Defendant's names into the NCIC did not result in any "hits" which would have disclosed that Defendant

1  was in federal custody because he was charged under the name "Luis Gerardo Avila-Ortega a/k/a Fidel
2  Hernandez-Ortega" in the other federal case.  Agent Wear testified that based on his subsequent review of
3  records after Defendant was located in May 2007, he knows that Defendant was sentenced in Case No.
4  CR-S-04-399 on April 22, 2005.  He testified that Defendant was thereafter transferred to the Federal
5  Prison in Vacaville, California, but he did not know when that transfer occurred.[1]

6        Agent Wear testified that on May 21, 2007, he was contacted by U.S. Marshal Intelligence analyst
7  Hector Dominguez at the federal prison in Victorville who informed him that based on his review of
8  records, Defendant Avila was incarcerated in that prison.  Upon receiving this information, Agent Wear
9  testified that he personally contacted the records department of the prison to determine whether
10 Defendant Avila was, in fact, incarcerated there.  It took him approximately two weeks to obtain
11 confirmation from the prison that Defendant was there and was serving his sentence under the name
12 "Fidel Hernandez Ortega."   After obtaining this information, Agent Wear contacted the U.S. Attorney
13 and a Writ of Habeas Corpus ad Prosequendum was thereafter obtained to take the Defendant into
14 custody to appear before this court for arraignment.

15       On cross-examination, Agent Wear testified that after he assumed the handling of the ATF file in
16 this case in January 2006, he thought that Defendant Avila may be in Mexico because he had previously
17 been deported on several occasions.  He also testified that he spoke with the U.S. Marshal's Service and
18 also checked NCIC to determine if there had been any hits.  Agent Wear acknowledged that the ATF had
19 obtained Defendant's F.B.I. fingerprint records in September 2004.  He also acknowledged that
20 Defendant's F.B.I. fingerprint number could be run through a computer data base to obtain Defendant's
21 criminal history.  Such a search would have presumably matched and disclosed Defendant's conviction in
22 Case No. CR-S-04-399, which, in turn, would have allowed the ATF to determine his location.  Agent
23 Wear acknowledged that to his knowledge the ATF did not perform such a fingerprint number search.

24       Agent Wear also acknowledged that Defendant's F.B.I. number could have been entered into the
25 Federal Bureau of Prisons' website which would have disclosed that he was in federal prison.  Agent

---

[1] It appears that Defendant was actually sent to the federal prison in Victorville, California and that Agent Wear's statement that he was sent to "Vacaville" is a misreading or misstatement of the file information.

4

Wear was apparently personally unaware of this possibility prior to May 2007, however, and to his knowledge ATF did not pursue such an inquiry. Agent Wear also testified that the ATF did not search for Defendant Avila under his "alien number" which would have also led to discovery that he was in federal prison. Agent Wear testified that ATF did not contact ICE to determine if they could provide Defendant's location even though ATF was aware that Defendant was transferred to ICE's custody in September 2004. Agent Wear was unaware, until recently, that Defendant Avila was brought to Nevada by state authorities in October 2006 to appear on state charges arising out of his arrest on September 1, 2004. Agent Wear testified that the ATF did not run Defendant's F.B.I. or State of Nevada identification numbers (which ATF had in its records) through the state "SCOPE" system which would have revealed his appearance in state court proceedings in October 2006.

     Agent Wear testified that he did contact the U.S. Marshal's Service to find out how the Defendant was located in May 2007. According to Agent Wear, the Marshal's Service could not identify which deputy marshal was assigned to find the Defendant between March 23, 2005 and May 21, 2007, and he was therefore unable to testify what efforts, if any, the Marshal's Service made to find Defendant Avila prior to May 21, 2007.

     Agent Wear acknowledged that the AFT did nothing proactive to locate Defendant between March 23, 2005 and May 21, 2007 other than to enter Defendant's names into the NCIC system.[2] In fact, other than entering the warrant into the NCIC system on or about March 23, 2005, the Government did nothing prior to May 21, 2007 to locate Defendant Avila and bring him before the court for arraignment in this case. No evidence has been presented that Defendant was aware of the Indictment in this case prior to the service of the Writ of Habeas Corpus ad Prosequendum in June 2007.

## DISCUSSION

The Sixth Amendment provides that in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial. In *Doggett v. United States*, 505 U.S. 647, 112 S.Ct. 2686 (1992), the Court noted that taken literally the speedy trial clause would forbid the government to delay an accused's trial

---

[2]Defendant's counsel also raised a question whether the ATF actually entered the warrant into the NCIC system. Based on Agent Wear's testimony, the Court accepts that Defendant's name and warrant were entered into NCIC.

for any reason at all.  The literal sweep of the clause has been qualified by the relevance of four inquires set forth in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182 (1972): (1) whether the delay before trial was uncommonly long, (2) whether the government or the criminal defendant is more to blame for that delay, (3) whether in due course, the defendant asserted his right to a speedy trial, and (4) whether he suffered prejudice as a result of the delay.  *Doggett,* 505 U.S. at 651.

As *Doggett* states, whether the delay before trial was uncommonly long involves a double inquiry.  In order to trigger a speedy trial analysis, the accused must first allege that the interval between accusation and trial has crossed the threshold dividing ordinary from "presumptively prejudicial" delay.  An accused cannot complain that the government has denied him a speedy trial if it has, in fact, prosecuted his case with customary promptness.  If the defendant makes the threshold showing of "presumptively prejudicial" delay, then the court must consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim. *Doggett*, 505 U.S. at 652, *citing Barker*, 407 U.S. at 533-534.

Depending on the nature of the charges, the lower courts have generally found that postaccusation delay is "presumptively prejudicial" as it approaches one year.  *Doggett,* 505 U.S. at 652 n. 1.  In *United States v. Beamon*, 992 F.2d 1009,1012-13 (9th Cir. 1993), the Ninth Circuit noted that while some courts have found that an eight month delay is sufficient to cross the  "presumptively prejudicial" threshold, delays approaching one year are the generally accepted standard and that the delays of 17 and 20 months in that case were more than sufficient to trigger the speedy trial inquiry under *Barker*.  In *United States v. Lam*, 251 F.3d 852, 856 (9th Cir. 2001), the court held that a 14 ½ month delay exceeded the threshold minimum.  *Lam* also noted that in *United States v. Valentine*, 783 F.2d 1413, 1417 (9th Cir. 1986), the court held that a six month delay in a case involving a single count of firearms possession by a convicted felon constituted a "borderline" case.

In evaluating the four factors, *Barker v. Wingo* states as follows:

> We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial.  Rather, they are related factors and must be considered together with such other circumstances as may be relevant.  In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process.

*Barker,* 407 U.S. at 533, 92 S.Ct. 2182; *see also United States v. Lam,* 251 F.3d at 856.

      The Supreme Court has identified three general types of prejudice that may result from excessive post-indictment delay – oppressive pretrial incarceration, anxiety and concern of the accused and the possibility that the defense will be impaired by dimming memories and loss of exculpatory evidence.  Of these forms of prejudice, "the most serious is the impairment of the defense because the ability of the defendant to prepare his case skews the fairness of the entire system." *Doggett*, 505 U.S. at 654.  *Doggett* also noted that *Barker* explicitly recognized that impairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony "can rarely be shown."  The court also noted that excessive delay may harm either the defense or the prosecution.  Although presumptive prejudice alone cannot carry a Sixth Amendment claim without regard to the other factors, its importance increases with the length of delay.  *Id.,* 505 U.S. at 655-656.

      *Doggett* also discussed the interplay and weight to be given the factors in determining whether an accused has been deprived of his right to a speedy trial.  Where the government has not been responsible for unreasonable delay, a defendant generally cannot prevail on a Sixth Amendment speedy trial claim regardless of the length of the delay unless he can show specific prejudice to his defense.  Conversely, if the government has been guilty of intentional bad faith delay, such delay will be weighed heavily against the government and may present an overwhelming case for dismissal where the delay has been excessive.  *Doggett* further states:

> Between diligent prosecution and bad-faith delay, official negligence in bringing an accused to trial occupies the middle ground.  While not compelling relief in every case where bad-faith delay would make relief virtually automatic, neither is negligence automatically tolerable simply because the accused cannot demonstrate exactly how it prejudiced him. ...
>
> [] Although negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun.  And such is the nature of the prejudice presumed that the weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows.  Thus, our toleration of such negligence varies inversely with its protractedness, cf. *Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988).

*Doggett,* 505 U.S. at 656-57.

. . .

1          The Court further stated that to warrant relief, negligence unaccompanied by particularized trial
2   prejudice must have lasted longer than negligence demonstrably causing such prejudice. *Id.,* 505 U.S. at
3   657.  Under the second and third *Barker* factors, the court is also required to consider whether the
4   defendant was responsible for the delay and whether he asserted his right to a speedy trial in due course.
5   Consideration of these factors may either lessen the weight to be given to the government's delay, or may
6   tip the factor of delay against defendant if he is primarily responsible for it.
7          In *Doggett*, the defendant was indicted in 1980 on federal drug charges but left the country before
8   the government could secure his arrest.  The DEA was aware that the defendant was imprisoned in
9   Panama, but after requesting that he be expelled back to the United States, never followed up on his
10  status to see if he had re-entered the United States.  The defendant, who was unaware of the indictment,
11  returned to the United States in 1982, subsequently married, earned a college degree and lived openly
12  under his own name and within the law.  In 1988, nearly eight and one-half years after the indictment was
13  filed and six years after defendant re-entered the country, the Marshal's Service located defendant after
14  performing a simple records check on individuals with outstanding warrants.  Because the defendant
15  could not affirmatively show that the delay prejudiced his defense, the district court denied his motion to
16  dismiss and the Court of Appeals affirmed.  The Supreme Court, however, reversed and held that the
17  indictment should be dismissed based on the extraordinary length of the delay, which was six times
18  longer than the delay generally sufficient to trigger judicial review, combined with the government's
19  negligence in failing to determine defendant's whereabouts and arrest him.
20         Similarly, in *United States v. Shell*, 974 F.2d 1035 (9th Cir. 1992), the court held that the
21  indictment should be dismissed where the government was guilty of a five year negligent delay.  In *Shell,*
22  the defendant filed a false passport application under another name in 1978.  After a DEA investigation of
23  his alleged involvement in a heroin conspiracy, defendant fled the country and lived abroad in Hong
24  Kong for several years until he was deported to Guam.  While living abroad, defendant used an alias
25  name. From 1980 to 1984, the government unsuccessfully attempted to locate the defendant.  In 1984 a
26  grand jury indicted defendant on the 1978 passport charge.  The government, however, misplaced
27  defendant's file in 1984 and did not search for him again until 1989.  Defendant was located and arrested
28  in Guam in 1990.  Based on *Doggett*, the court held that the government's negligence in misplacing the

file and not looking for the defendant for five years after the indictment was filed warranted dismissal based on presumptive prejudicial delay. The court also held that the government had not "persuasively rebutted" the presumption of prejudice. The court stated:

> It [the government] suggests that because Shell has conceded that most of the essential witnesses and documentary evidence is still available, the presumption of prejudice is rebutted. We are not persuaded. Although the Court [in *Doggett*] did not define precisely what type of evidence must be shown to rebut the presumption, we have little doubt that the government has failed to meet its burden here.

*Shell*, 974 F.2d at 1036.

Conversely, in *United States v. Aguirre*, 994 F.2d 1454, 1457-58 (9th Cir. 1993), the court denied a motion to dismiss where there had been a five year delay. The court found that the government was not negligent and that the defendant had acquiesced in the delay by not timely asserting his right to a speedy trial by making himself available for arraignment. The defendant in *Aguirre* was indicted in 1983 for conspiracy to possess government checks stolen from the mail. Agents charged with executing the arrest warrant learned that defendant was residing in England at the time the indictment was filed. The agents entered "stops" on defendant in three government data bases and one in California, defendant's home state and the state where the charged crime was committed. The defendant was aware in 1983 of the charges against him and requested a postponement of his court appearance until January 1984 when he could return to the United States. Although defendant returned to the country shortly after he requested the postponement, he made no attempt to contact the government for purposes of surrendering or scheduling a court appearance. Defendant was finally arrested five years later in 1988 when customs agents ran a computer check on him as he crossed the border from Mexico into Arizona. The court affirmed the district court's determination that the government was not negligent in failing to locate defendant prior to 1988. This finding was apparently based on the government's information that defendant was outside the country and because the government entered "stops" for defendant in the three government data bases and in California. Because the government was not responsible for the delay, the court held that the five year delay, standing alone, was not sufficient to warrant dismissal of the indictment. In addition, *Aguirre* held that defendant's knowledge of the indictment in 1983 and his failure to appear and answer the charges weighed against him under the third *Barker* factor – whether the

defendant has, in due course, asserted his right to a speedy trial. The court also stated:

> In addition to its independent significance under factor (3) of *Barker*, Aguirre's failure to assert his right to a speedy trial also bears on *Doggett's* prejudice analysis. *Doggett* holds that we should presume prejudice only if the defendant isn't responsible for the delay. It follows that Aguirre's acquiescence in the delay, despite his knowledge of the outstanding indictment, is a second reason to place the burden of proving prejudice on him – and place it more heavily.

*Aguirre*, 994 F.2d at 1457.

In *United States v. Beamon*, 992 F.2d 1009 (9th Cir. 1993), the defendants, Beamon and McMillin, were arrested on March 30, 1990 by local police during an undercover narcotics purchase and were released from state custody shortly thereafter. Because of the amount of drugs involved, the state authorities requested federal prosecution and a federal indictment was filed against defendants on May 8, 1990. A local police officer searched for both defendants until June 1990 by driving by and surveilling their residences. The officer also spoke to Beamon's wife and requested that she ask Beamon to contact the officer but did not advise her of the federal indictment or warrant. Prior to the indictment, Beamon and his attorney had also met with state authorities regarding civil forfeiture of his vehicle arising from the March 1990 arrest but were not informed of any pending state or federal criminal charges. The local police officer abandoned his search for Beamon and McMillin in June 1990 in the belief that the U.S. Marshals would take over. There were apparently no further efforts by law enforcement to find and arrest the defendants until October 1991 when the local officer again drove by Beamon's house, made contact with Beamon and arrested him on the federal warrant. Following Beamon's arrest, officers contacted McMillin's parents who stated that they would contact him and convince him to surrender. McMillin surrendered in January 1992. The district court found that neither Beamon nor McMillin were aware of the indictment prior to their respective arrest and surrender, and that neither defendant attempted to evade discovery by law enforcement. The district court therefore found that the government was negligent in failing to timely locate and arrest defendants.

Although the court in *Beamon* found that the government was guilty of negligent delay in locating and arresting defendants, and that neither defendant was responsible for the delay, the Ninth Circuit nevertheless rejected defendants' argument under *Doggett* that they were not required to show actual prejudice in order to establish the violation of their Sixth Amendment right to speedy trial. In so holding,

the court stated:

> Measured by *Shell* and *Doggett*, the delays in this case are not "great." Seventeen and 20 months are only five to eight months longer than the one year benchmark which triggers the speedy trial inquiry under *Barker v. Wingo*. See *Doggett*, 505 U.S. at --- n. 1, 112 S.Ct. at 2691 n. 1. This is not close to the delay of eight times the one year benchmark in *Doggett*, or the delay of five times that point in *Shell*.[3]
>
> Although the government did not pursue Beamon and McMillin with due diligence, if the delay in this case -- only a few months longer than the minimum -- were sufficient as a matter of law to relieve the defendant of the burden of coming forward with any showing of actual prejudice, the presumption of prejudice would be virtually irrebuttable. It is clear from *Doggett's* balancing approach that the Court did not intend such a bright line rule. Therefore, we must consider the amount of delay in relation to the particularized prejudice.

*Beamon*, 992 F.2d at 1014.

The court rejected the defendants' argument that their defense was prejudiced because they had a better chance of negotiating a favorable resolution of the case before the time they were arrested. The court held that a weakened plea bargaining position is not the type of prejudice protected by the Sixth Amendment. *Beamon*, 992 F.2d at 1014, *citing United States v. Turner*, 926 F.2d 883, 889 (9th Cir.), *cert. denied*, 502 U.S. 830, 112 S.Ct. 103, 116 L.Ed 2d 73 (1991). In concluding that the indictment should not be dismissed based on a violation of the defendants' Sixth Amendment right to a speedy trial, the court stated:

> On balance, we cannot say that the government's negligence, which caused a delay less than two times as long as the threshold, in light of the presumption of prejudice and the tenuous showing of actual prejudice, entitles Beamon and McMillin to relief. The delay of 17 to 20 months was too long, but not as long as other delays which have been upheld. *See, e.g., United States v. Williams,* 782 F.2d 1462, 1465-66 (9th Cir.1985) (39 month delay with no government negligence and minimal showing of prejudice does not violate Sixth Amendment). The government was negligent, but this negligence is weighted less than deliberate delay. *See United States v. Simmons,* 536 F.2d 827, 831 (9th Cir.), *cert. denied,* 429 U.S. 854, 97 S.Ct. 148, 50 L.Ed.2d 130 (1976). In addition, neither Beamon nor McMillin has shown any actual prejudice. *Id.* (showing of minimal prejudice is insufficient to establish a Sixth Amendment violation); *Sears, Roebuck,* 877 F.2d at 740 (defendant "did not make a showing of prejudice which could justify dismissal on Sixth Amendment grounds"); *United States v. Valentine,* 783 F.2d 1413, 1417-18 (9th

---

[3] *Doggett* measured the period of negligent delay by the government to be six years based on when defendant re-entered the United States after the indictment.

11

> Cir.1986) (six month delay with minimal prejudice, *i.e.,* one month incarceration and some destroyed evidence, is insufficient); *see also United States v. Loud Hawk,* 474 U.S. 302, 315, 106 S.Ct. 648, 656, 88 L.Ed.2d 640 (1986) ("possibility of prejudice is not sufficient to support" violation of speedy trial rights). Accordingly, while the government's negligence caused a delay long enough to trigger a speedy trial inquiry under *Barker,* the delay of 17 to 20 months is not sufficient to excuse the defendants altogether from any showing of actual prejudice. Their only showing, the possibility of a better plea bargain, is speculative and therefore not persuasive. On these facts, we conclude that Beamon and McMillin are not entitled to relief.

*Beamon*, 992 F.2d at 1014-15.

In *United States v. Williams,* 782 F.2d 1462, 1465-66 (9th Cir.1985), cited in *Beamon, supra,* the district court held that the government was not responsible for the 39 month delay in apprehending defendant based on its reasonable efforts to locate him. The court also found defendant made it difficult for the government to find him by leaving the state without permission while on parole and keeping his whereabouts unknown, living under circumstances where his identity could not easily be determined by law enforcement authorities and concealing his true identity when he was arrested. The court also found, however, that there was no evidence that defendant knew of the indictment such that his failure to assert his right to a speedy trial could be weighed against him. The court also found that any actual prejudice to defendant's defense was minimal. Although *Williams* was decided prior to *Doggett,* it does not appear that dismissal would have been required under *Doggett* based on the court's determination that the government was not responsible for the delay.

In this case, the delay between Defendant Avila's indictment on March 23, 2005 and his initial trial date of August 27, 2007 is 29 months. The amount of delay is therefore more than sufficient to trigger the Court's speedy trial analysis under the *Barker* factors. Of that 29 months delay, approximately 26 months is attributable to the Government's failure or inability to locate Defendant despite the fact that he was in continuous federal custody, except for those periods when he appeared in Nevada state court in regard to a prosecution that arose out of the same September 1, 2004 incident and arrest. It took approximately another month from when Defendant was found in federal custody to bring him before the court for arraignment at which time trial was set for August 27, 2007. The length of pretrial delay beyond the generally accepted benchmark of one year in this case is considerably longer than the delay in *Beamon, supra,* but is still substantially less than the delay in *Doggett* and *Shell*.

The next factor to be considered is whether the Government or Defendant is more to blame for the delay. *Doggett, Shell, Beamon, Aguirre* and *Williams* all dealt with the government's alleged negligence in failing to diligently search for and apprehend the defendants in a timely manner. *Doggett, Shell* and *Beamon* upheld findings of governmental negligence where the government could have readily found the defendants if it had searched for them. There was also no evidence that the defendants were attempting to avoid discovery during the period after indictment. By contrast, in *Aguirre* and *Williams*, it appears that the defendants' conduct factored into the courts' determinations that the government was not negligent. In *Aguirre,* the government was aware that defendant was outside the country at the time the indictment was filed and therefore entered "stops" in various data bases. The defendant, who was aware of the charges, also promised to contact the authorities once he returned to the United States, but failed to do so. The facts in that case do not indicate where defendant was during the ensuing five years until he was apprehended crossing the Mexico/U.S. border. In *Williams,* the defendant's actions in concealing his whereabouts made it difficult for the government to find him.

In this case, Defendant Avila was actually in federal custody in this district under a different name at the time the Indictment was filed on March 23, 2005. He remained in federal custody in this district for another one to two months until he was sentenced and transferred to the custody of the Bureau of Prisons and then sent to the federal prison in Victorville, California where he apparently remained, except for appearances in Nevada state courts. The Government seeks to refute Defendant's allegation of governmental negligence by arguing that Defendant's use of various alias names made it difficult to identify him and therefore delayed the Government in finding Defendant in federal custody. As *Williams*, *supra,* indicates, a defendant's conduct in concealing his identity or whereabouts is a factor in deciding whether or not the Government was negligent. While Defendant's use of alias names arguably made it more difficult for the Government to promptly identify and locate him, it does not excuse the Government's failure to find Defendant in federal custody for more than two years.[4]

---

[4]There is no evidence that the ATF agents or the U.S. Marshals who were charged with apprehending Defendant Avila in this case actually knew prior to May 27, 2007 that he was the same person as the "Luis Gerardo Avila-Ortega a/k/a Fidel Hernandez-Ortega" who was indicted, convicted and sentenced in Case No. CR-S-04-399. Were that the case, the Court would find that the

The Court probably need look no further than *Doggett* for authority in concluding that the Government's lack of due diligence between March 23, 2005 and May 21, 2007 was responsible for the post-indictment delay in this case. As *Doggett* indicates, the Government has an obligation to exercise due diligence to find and apprehend indicted persons. It is not due diligence to simply wait until an accused "pops-up" into government view and then arrest him. As the Court stated:

> For six years, the Government's investigators made no serious effort to test their progressively more questionable assumption that Doggett was living abroad, and, had they done so, they could have found him within minutes. While the Government's lethargy may have reflected no more than Doggett's relative unimportance in the world of drug trafficking, it was still findable negligence and the finding stands.

*Doggett*, 505 U.S. at 652-53.

Unlike the defendants in *Williams* or *Aguirre,* Defendant Avila was never outside the immediate reach of the Government. He was actually in federal or state custody at all times between March 23, 2005 and June 2007, albeit under a different name(s). The Government's argument that Defendant's use of alias names complicated or frustrated its ability to locate him would be more persuasive if Defendant Avila was out of custody and he was using alias names to prevent the Government from finding him. Agent Wear's testimony at the evidentiary hearing, however, demonstrates that the Government had a number of different methods by which it could have promptly identified and located Defendant Avila in federal custody. The only thing that the ATF or the Marshal's Service did to find Defendant after the Indictment was filed, however, was to enter his name and USMS number in the NCIC system. During the ensuing two years and two months, the ATF took no further steps to try to find the Defendant. The Government did not produce any witness from the U.S. Marshal's Service to testify what, if any, action it took to try to locate the Defendant.

The Court is satisfied that it is not uncommon or unusual for defendants such as Mr. Avila to have or use alias names. The Government was also presumably aware of this and reasonably could and should have used other available means to locate Defendant, especially given its knowledge that Defendant was

---

Government's delay in failing to bring Defendant before the court for arraignment for more than two years was willful or reckless.

in federal ICE custody in September 2004.[5] The Government's failure to exercise reasonable diligence is also demonstrated by the fact that Nevada law enforcement officers, who also charged Defendant Avila with crimes arising out of the September 1, 2004 arrest, were able to locate him in federal custody and bring him before the Nevada courts in 2006 to face a preliminary hearing, arraignment, plea and sentencing on state charges. Agent Wear's testimony also establishes that the ATF failed to inquire of Nevada law enforcement authorities whether they had pursued charges against Defendant Avila, and if so, whether they had been successful in locating him.

The Court, therefore, finds that the Government was clearly negligent in failing to pursue reasonable efforts to identify and locate Defendant which would have resulted in the much earlier discovery that he was in federal custody. While Defendant Avila's use of alias names, to some modest extent, mitigates the weight that would otherwise be assigned to the Government's negligence, it does not significantly reduce it. Because there is no evidence that Defendant Avila knew of the Indictment in this case prior to May or June 2007, he also cannot be charged with failing to exercise his right to demand a speedy trial.

The only applicable prejudice in this case is the "presumptive prejudice" to Defendant Avila's ability to defend against the charges in the Indictment. Because Defendant Avila was apparently unaware of the Indictment and was in federal custody on other charges, he did not suffer anxiety or concern because of the delay. Nor was he subjected to oppressive pretrial incarceration in regard to the charges in this case. The alleged crime, possession of a firearm by a convicted felon, occurred nearly three years ago

---

[5]Agent Wear also testified that because Defendant Avila was an illegal alien, he assumed that he may have left the country and returned to Mexico after the Indictment was filed. Unlike the circumstances in *Doggett, Shell* or *Aguirre*, however, the Government had no specific information that Defendant Avila had left the country such that he was beyond the ability of the Government to arrest him at any time. Additionally, Agent Wear's testimony indicates that the ATF was aware in September 2004 that Defendant had been transferred to the custody of Immigration and Custom Enforcement. The ATF, however, apparently made no inquiry of ICE to find out what happened to Defendant after he entered its custody. While it may have been logical for the Government to suspect that Defendant may have been deported or left the country, this did not justify the Government in failing to take any action to determine such. In this regard, the Court in *Doggett* faulted the Government for its failure to pursue defendant after it reasonably should have known that he may have returned to the country.

in September 1, 2004. Prejudice to Defendant's defense is presumed because of the passage of time and the reasonable likelihood that the memories of witnesses have dimmed and that Defendant's ability to obtain exculpatory evidence may have been impaired. On the other hand, the crime charged is a relatively simple one. In support of his argument that his defense has actually been prejudiced, Defendant states in his Motion as follows:

> Here, because two years have passed since Mr. Avila was indicted, Mr. Avila is now unaware of the whereabouts of material witnesses to this instant matter. The crime scene may have been changed. The status of the weapon in question and any attempt by the defense to have that weapon fingerprinted for evidence has also been compromised due to the passage of time.
>
> Moreover, the possibility exists that a suppression motion will be filed requiring the need for an evidentiary hearing. The court would then have to trust the memory of police officers concerning an event two years old and likely preceded by many hundreds of other arrest and incidents in which they have been involved. That testimony would be inherently unreliable.

*Defendant's Motion* (#20), p. 6.

      At this point, no specific evidence has been provided that material witnesses are no longer available, that the crime scene has been changed in a manner material to the defense, or that Defendant's ability to have the weapon examined for fingerprints has been compromised. Nor has the Court yet been presented with a motion to suppress in which a key issue regarding the validity of the arrest or a search may be dependent on the officers' allegedly unreliable memories. Such determinations should be made based on an evidentiary record in which the Court assesses whether the defense has actually been compromised. *See e.g. United States v. Williams*, 782 F.2d 1462, 1466 (9th Cir. 1986), in which the court evaluated the evidence to determine whether defendant's inability to present an alleged alibi witness actually prejudiced his defense. Defendant's contentions, at this point, are speculative. He has not yet demonstrated actual prejudice to his defense as a result of the delay in this case.

      Because Defendant has not shown specific and actual prejudice to his defense caused by the delay, this case comes down to substantially the same issue that was before the Ninth Circuit in *Beamon* – whether the length of the post-indictment delay, caused by the Government's negligence, is of such excessive length that the indictment should be dismiss even absent proof of actual prejudice. Under *Doggett* and *Shell*, post-indictment delays of five or six years resulting from governmental negligence are

clearly sufficient to mandate dismissal even absent evidence of actual prejudice. *Beamon* held, however, that 17 and 20 months of post-indictment delay caused by the government, or five and eight months of delay beyond the one year benchmark, were not sufficient to warrant dismissal of the indictment in the absence of proof of actual prejudice. As *Beamon* also noted, *Doggett* did not establish any bright line rule as to when negligent governmental delay requires dismissal absent proof of actual prejudice. The importance of presumptive prejudice as a factor, however, increases with the length of delay. The weight assigned to official negligence also compounds over time as the presumption of evidentiary prejudice grows. *Doggett, supra.* Beyond that, *Doggett, Shell* and *Beamon* are not definitive regarding the point at which post-indictment delay caused by governmental negligence crosses so far over the line that dismissal of the indictment is required notwithstanding the absence of proof of actual prejudice.

The post-indictment delay in this case is approximately nine months to one year longer than in *Beamon* and, therefore, the weight assigned to the Government's negligence and the importance to be accorded to presumptive prejudice is greater in this case than it was in *Beamon*. This case, therefore, presents a stronger basis for dismissal than *Beamon*, but the delay still does not reach the point where dismissal would be clearly required under *Doggett* or *Shell*. The Court also takes note that the passage of time between when the alleged crime was committed and when trial is now scheduled is approximately three years. This is a considerably lesser amount of time than the 8 ½ years in *Doggett* or the 12 years in *Shell*. Although the Supreme Court and Ninth Circuit case law does not provide definitive instruction, the Court concludes that the delay in this case is not yet of such duration as to require dismissal of the Indictment in the absence of any evidence that Defendant has suffered some actual prejudice to his defense.

## **CONCLUSION**

The Court finds that the Government is responsible for the post-indictment delay in this case due to its failure to exercise due diligence to find the Defendant who was in federal custody. The Court further finds, however, that the length of delay in this case is not yet sufficiently long to require dismissal of the Indictment absent evidence that Defendant's defense has actually been prejudiced by the delay. Defendant has not, as yet, demonstrated any actual prejudice to his defense caused by the delay. The Court also notes that Defendant promptly filed his motion to dismiss to preserve his claim that his Sixth

Amendment rights have been violated by the delay and to also timely assert his right to a speedy trial under the third *Barker* factor.  Because the Court cannot rule out the possibility that Defendant may hereafter be able to demonstrate some actual prejudice to his defense caused by the delay, Defendant should be allowed to renew his motion to dismiss if he is hereafter able to demonstrate that his defense has actually been prejudiced.

### RECOMMENDATION

**IT IS RECOMMENDED** that Defendant's Motion to Dismiss Indictment (For Post-Indictment Delay) (#20) be **denied**, without prejudice.

### NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within ten (10) days.  The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time.  *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court.  *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 23rd day of August, 2007.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge